UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:05CR496 CEJ |
| ) | (FRB) |
| RONALD BAKER, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Presently pending before the Court is defendant Ronald Baker's Motion to Include *Mens Rea* and Causation Requirements in 21 U.S.C. § 841(b)(1)(C) and to Define the Term "Use" in that Statute or, Alternatively, to Declare 21 U.S.C. § 841(b)(1)(C) Unconstitutional as Applied in His Case. The motion was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). A hearing was held on the motion on August 17, 2006.

Defendant Ronald Baker is presently charged by superseding indictment with five counts of knowingly and intentionally distributing more than five grams of cocaine base (crack), a schedule II controlled substance, in violation of 21 U.S.C. § 841 and punishable by 21 U.S.C. § 841(b)(1)(B)(iii), with such offenses alleged to have occurred in August and November 2004, and in August 2005. The superseding indictment also alleges, in Count VI, that on August 26, 2005, defendant knowingly and intentionally distributed crack cocaine in violation of 21 U.S.C. § 841(a)(1), and that death

or serious bodily injury resulted from the use of such substance thereby making the crime punishable under 21 U.S.C. § 841(b)(1)(C). In the instant motion, defendant challenges only Count VI of the superseding indictment, and specifically, the application of 21 U.S.C. § 841(b)(1)(C)'s punishment provisions thereto. The government has responded to the motion, to which defendant has replied. The parties were heard on the motion on August 17, 2006.

Section 841(a)(1) of Title 21 makes it unlawful for any person to knowingly or intentionally distribute a controlled substance. Section 841(b) sets forth the penalties to be imposed for such unlawful conduct, with the sentence to be determined in accordance with specific factors of the offense as enumerated in § 841(b)(1)-(7). Under § 841(b)(1)(C), a person who distributes a schedule II controlled substance in violation of § 841(a)(1)

> shall be sentenced to a term of imprisonment of not more than 20 years and *if death or serious bodily injury results from the use of such substance* shall be sentenced to a term of imprisonment of not less than twenty years or more than life . . . . If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years and *if death or serious bodily injury results from the use of such substance* shall be sentenced to life imprisonment . . . . Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under the provisions of this subparagraph which provide for a mandatory term of imprisonment if death or serious bodily injury results, nor shall a person so sentenced

>     be eligible for parole during the term of such a
>     sentence.

(Emphasis added.)[1]

In relation to the instant motion, the parties aver that defendant Baker has a prior conviction for a felony drug offense and thus that he would be subject to a mandatory term of life imprisonment for his alleged violation of § 841(a)(1) if the sentencing provisions of § 841(b)(1)(C) were to apply to Count VI of the superseding indictment.

Defendant argues that to invoke the enhanced penalty provision of life imprisonment under § 841(b)(1)(C), the government must prove that the defendant acted with the requisite *mens rea*, that is, that he intended that death or serious bodily injury would result from his conduct, or that he acted with extreme recklessness thereto; and that the conduct of the defendant proximately caused the decedent's death. Defendant argues that the failure to require the government to prove *mens rea* and causation beyond a reasonable doubt would result in the unconstitutional denial of defendant's right to due process. In addition, with respect to the specific factual allegations of this case, defendant argues that the decedent did not "use" the controlled substance as contemplated by the statute, and thus that the "death results" provision of § 841(b)(1)(C) cannot be applied to him for this alleged offense.

---

[1] For purposes of discussion, § 841(b)(1)(C)'s provision of "if death or seriously bodily injury results from the use of such substance" will be referred to as the "death results" provision.

For purposes of the instant motion, defendant requests the Court to assume that the government could prove the following facts in relation to the offense alleged in Count VI of the superseding indictment: That on August 25, 2005, while conducting surveillance at 2618 Osage located in the City of St. Louis, Missouri, law enforcement officers observed what they believed to be a hand-to-hand drug transaction between defendant Baker and another individual, Jason Bolar. Subsequent to the transaction, the officers observed Bolar to return to his vehicle and leave the area. The surveilling officers contacted officers of the St. Louis Metropolitan Police Department and requested that they stop Bolar's vehicle and determine whether he possessed controlled substances. After St. Louis Police Officers Mitchell and Stevens located Bolar's vehicle, Officer Stevens observed Bolar to put something in his mouth and begin to chew. Upon stopping Bolar's vehicle and removing Bolar from the car, the police officers ordered Bolar to spit out what he had placed in his mouth but Bolar refused. Looking at Bolar's lips, the officers observed a white substance and they observed what they believed to be crack cocaine in Bolar's mouth. Paramedics were called and Bolar was transported to St. Alexius Hospital where he ultimately admitted to medical personnel that he had ingested drugs. Bolar died while medical personnel were attempting to pump his stomach. Medical personnel at St. Alexius informed law enforcement that Bolar died from cocaine-induced cardiac arrest.

A.  *Mens Rea*

The statute proscribing the distribution of controlled substances distinguishes between the specific intent necessary for the "unlawful act" of distribution, 21 U.S.C. § 841(a)(1), and strict liability punishment based on which controlled substance was distributed, how much of it, and whether death or serious injury resulted from its use, 21 U.S.C. § 841(b)(1).  The plain language of the statute imposes no *mens rea* requirement for the punishment provisions of § 841(b)(1).  See United States v. Barbosa, 271 F.3d 438, 458 (3d Cir. 2001).

Under § 841(b)(1)(C), a person convicted under § 841(a)(1) who has a prior felony drug conviction "shall be sentenced to a term of imprisonment of not more than 30 years and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment[.]"  The Eighth Circuit has explicitly held the "death results" language of § 841(b)(1)(C) to be unambiguous, finding such language to show Congress's clear intent "to expose a defendant to a more severe minimum sentence *whenever* death or serious injury is a consequence of the victim's use of a controlled substance that has been manufactured or distributed by that defendant."  United States v. McIntosh, 236 F.3d 968, 972 (8th Cir. 2001) (emphasis in original).  Where the language of the statute is unambiguous, the Court should "decline to hinder Congress's will, apparent from the face of the statute, through a judicial pronouncement that the statute requires more than it says."  Id.

Because such matters lie in the hands of Congress, Barbosa, 271 F.3d at 458, this Court should heed the Eighth Circuit's instruction in McIntosh and decline to include a *mens rea* requirement in the unambiguous "death results" provision of § 841(b)(1)(C).

Defendant argues, however, that the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), requires *mens rea* to be proved inasmuch as the "death results" provision of § 841(b)(1)(C) becomes an element of the offense if the enhanced penalty of life imprisonment is sought. In Apprendi, the Supreme Court announced a newly-recognized, constitutional principle which requires the government to submit to the jury and prove beyond a reasonable doubt "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" other than the fact of a prior conviction. Apprendi, 530 U.S. at 490. Nothing in Apprendi or its progeny, however, requires the government to prove a defendant's *mens rea* in sentencing fact(s) which give rise to an enhanced punishment. See Barbosa, 271 F.3d at 457-59. Here, the government does not dispute that to invoke the enhanced penalty provision of § 841(b)(1)(C) as to Count VI, it must prove beyond a reasonable doubt that death or serious bodily injury resulted from the use of the crack cocaine distributed by the defendant. Nothing more is required. Barbosa, 271 F.3d at 457-59.

In addition, the undersigned notes that the death of Jason Bolar is not a factor that is necessary to the determination of whether defendant's alleged conduct in distributing crack cocaine is

"criminal" or "innocent" under § 841.  Defendant would be guilty of the crime alleged whether or not Bolar died from his ingestion of the crack cocaine.  It cannot be said, therefore, that the government is required to prove scienter where the circumstance of Bolar's death is irrelevant to whether defendant committed the crime of unlawful distribution of a controlled substance.  See United States v. Collazo-Aponte, 281 F.3d 320, 326 (1st Cir. 2002) (presumption in favor of scienter requirement applies only to each of the statutory elements that criminalize otherwise innocent conduct) (quoting United States v. X-Citement Video, Inc., 513 U.S. 64, 72 (1994)).  "Criminal intent serves to separate those who understand the wrongful nature of their act from those who do not, but does not require knowledge of the precise consequences that may flow from that act once aware that the act is wrongful."  X-Citement Video, 513 U.S. at 73 n.3.

Defendant's reliance on Morissette v. United States, 342 U.S. 246 (1952), and United States v. United States Gypsum Co., 438 U.S. 422 (1978), to argue otherwise is misplaced.  In Morissette and Gypsum Co., the Supreme Court reaffirmed the common law principle that intent generally remains an indispensable element of a criminal offense.  Gypsum Co., 438 U.S. at 437; see generally, Morissette, 342 U.S. 246.  Therefore, "'[m]ere omission . . . of intent [in the statute] will not be construed as eliminating that element from the crimes denounced[.]"  Gypsum Co., 438 U.S. at 437 (quoting Morissette, 342 U.S. at 263).  Here, however, contrary to the statutes at issue in Morissette and Gypsum Co., the statute under

which defendant Baker is charged explicitly contains an intent element: "[I]t shall be unlawful for any person *knowingly or intentionally* to . . . distribute . . . a controlled substance[.]" 21 U.S.C. § 841(a)(1). As such, contrary to defendant's argument, the statute satisfies the Supreme Court's pronouncement in Morissette and Gypsum Co. and expressly imposes criminal liability only upon a finding of fault. As discussed, supra, however, a defendant need not intend the consequences of his knowing or intentional unlawful act to be subject to severe penalties therefor. X-Citement Video, 513 U.S. at 73 n.3.

Trafficking in a controlled substance is all that is required to satisfy the *mens rea* portion of the substantive offense of § 841. Barbosa, 271 F.3d at 458. The government need not prove more than the statute requires. United States v. Houston, 406 F.3d 1121, 1124 (9th Cir. 2005). Accordingly, defendant's request for this Court to insert a *mens rea* requirement in the enhanced penalty provision of § 841(b)(1)(C) should be denied.

B. Causation

Defendant also argues that to obtain an enhanced sentence of life imprisonment under § 841(b)(1)(C), the government is required to prove beyond a reasonable doubt that defendant's conduct caused Bolar's death. At the hearing, the government agreed that it must prove "cause-in-fact," that is, that the drugs sold by the defendant were the drugs that were taken by Bolar and caused his death. The government argues, however, that it is not required to prove

proximate cause, or foreseeability, to obtain the sentence enhancement under § 841(b)(1)(C). The government's argument is well taken.

The "death results" language of § 841(b)(1)(C) requires the government to show cause-in-fact, that is, that Bolar's death was caused in fact by his use of the crack cocaine distributed by the defendant. See Houston, 406 F.3d at 1125. Proximate cause, however, at least insofar as it requires Bolar's death to have been foreseeable, is not required to be proven. Id. Indeed, courts have consistently held that foreseeability/proximate cause is not required to be proven for the penalty enhancements of § 841(b)(1)(C) to apply. See United States v. Monnier, 412 F.3d 859, 862 (8th Cir. 2005); Houston, 406 F.3d at 1125; United States v. Soler, 275 F.3d 146, 152-53 (1st Cir. 2002); McIntosh, 236 F.3d at 972-73; United States v. Robinson, 167 F.3d 824, 830-32 (3d Cir. 1999); United States v. Patterson, 38 F.3d 139, 145-46 (4th Cir. 1994). In Patterson, the Fourth Circuit noted:

> The statute puts drug dealers and users on clear notice that their sentences will be enhanced if people die from using the drugs they distribute . . . . Where serious bodily injury or death results from the distribution of certain drugs, Congress has elected to enhance a defendant's sentence regardless of whether the defendant knew or should have known that death would result.

Patterson, 38 F.3d at 145 (internal citation omitted).

Congress specified that the heightened sentence under § 841(b)(1)(C)

would apply if death results from the distribution of a controlled substance. "This language unambiguously eliminates any statutory requirement that the death have been foreseeable." Houston, 406 F.3d at 1124. According to the statute's language, as long as death "results" from the use of a described controlled substance, the person convicted of distributing the substance "shall be sentenced" to the prescribed term of imprisonment, which, in the case of defendant Baker here, would be life imprisonment. 21 U.S.C. § 841(b)(1)(C).

Accordingly, defendant's argument that the government must prove foreseeability or that the defendant's conduct proximately caused Bolar's death should be denied.

C. Due Process

Defendant also argues that because of the severity of § 841(b)(1)(C)'s penalty itself, that is, life imprisonment, due process requires a *mens rea* element and causation to be proven prior to the penalty's imposition.

In Houston, the Ninth Circuit recognized that while there may be circumstances too attenuated between the distribution and the death such that the imposition of criminal liability for such death under § 841(b)(1)(C) may violate due process, see 406 F.3d at 1124 n.5, no such attenuated circumstances exist here. Assuming the government could prove the facts as set out above, the circumstances here show that defendant sold crack cocaine directly to Jason Bolar; that Bolar ingested the crack cocaine by swallowing it; and that

shortly after ingesting the crack cocaine distributed by the defendant, Bolar died from cocaine-induced cardiac arrest. "Proof that the resulting death was actually caused by ingestion of the controlled substance knowingly distributed by the defendant is sufficient to increase the punishment for the unlawful distribution" without violating due process. Id.

Further, as set out above, the penalty provisions set out in § 841(b)(1)(C) reflect Congress's intent to punish drug traffickers for the consequences of their unlawful behavior in distributing controlled substances. McIntosh, 236 F.3d at 972; Robinson, 167 F.3d at 831; Patterson, 38 F.3d at 145. See also United States v. Valencia-Gonzales, 172 F.3d 344, 346 (5th Cir. 1999) ("Congress certainly had a rational basis to 'resolve that there is some deterrent value in exposing a drug trafficker to liability for the full consequences, both expected and unexpected, of his own unlawful behavior.'") (quoting United States v. Strange, 102 F.3d 356, 361 (8th Cir. 1996)). With the unambiguous language of § 841(b)(1)(C), Congress has put drug dealers on "clear notice that their sentences will be enhanced if people die from using the drugs they distribute." Patterson, 38 F.3d at 145. As observed by the Third Circuit in Robinson, Congress has recognized that controlled substances are products which will, in some cases, cause death or serious bodily injury. "In short, Congress recognized that the risk is inherent in the product and thus it provided that persons who distribute it do so at their peril." Robinson, 167 F.3d at 831.

Congress has put persons on notice that their knowing or intentional distribution of controlled substances will result in the imposition of severe penalties, including life imprisonment, if the use of such controlled substances results in death. Given the seriousness of the crime and the recognition of the serious risks and consequences involved in such a crime, it cannot be said that Congress's determination to strictly impose life imprisonment as a penalty results in a violation of a defendant's right to due process, especially when such penalty can be imposed *only* after the government proves to a jury beyond a reasonable doubt that the defendant intentionally distributed a controlled substance and that the controlled substance distributed by the defendant caused, in fact, the victim's death. Apprendi, 530 U.S. at 490 (government must submit to jury and prove beyond reasonable doubt any fact that increases the penalty for a crime beyond the prescribed statutory maximum); cf. Specht v. Patterson, 386 U.S. 605 (1967) (enhanced penalty of life imprisonment imposed upon additional findings violates due process where findings made post-trial, without notice and without defendant having an opportunity to be present, to be heard, to be confronted with and to cross-examine adverse witnesses, and to present evidence of his own).

In light of the above, where the government proves beyond a reasonable doubt that the defendant committed the unlawful act of distributing a controlled substance as proscribed under § 841(a)(1), including the defendant's intent to commit the act, and additionally

proves beyond a reasonable doubt that death resulted from the use of the substance unlawfully distributed, the imposition of a life sentence as statutorily prescribed does not violate the defendant's right to due process in the absence of proof of *mens rea* and causation in the death of the victim, which are, as discussed above, non-elements of the offense.

D.  Death Results from "Use" of Controlled Substance

In his final argument, defendant contends that Bolar's swallowing of the crack cocaine did not constitute "use" of the substance as contemplated by the statute, and thus that the life imprisonment provision of § 841(b)(1)(C) cannot be applied to him. Defendant specifically argues that the statute's use of the word "use" is intended to mean that the controlled substance "is employed for the purposes the drug is intended for, its mood or mind altering properties." (Deft.'s Motion, at p. 11.)  For the following reasons, defendant's claim must be denied.

This is not the first instance in which courts have had to grapple with the intended meaning of the word "use" in interpreting criminal statutes.  In Bailey v. United States, 516 U.S. 137 (1995), the Supreme Court examined the language and statutory scheme of 18 U.S.C. § 924(c)(1) when determining Congress's intended meaning of the word "use" in its proscription of using or carrying a firearm during and in relation to any crime of violence or a drug trafficking crime.  In its analysis, the Supreme Court began with the language of the statute and ascribed the "ordinary or natural" meaning to the

word "use," specifically noting the meaning to be variously defined as "'[t]o convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.'" Bailey, 516 U.S. at 144-45 (citations omitted). The Court noted the various definitions to imply action and implementation and not mere possession. Id. at 145. In Smith v. United States, 508 U.S. 223 (1993), the Supreme Court held that a defendant's "use" of a firearm under § 924(c)(1) is not restricted to only the firearm's *intended* use, that is, as a weapon. 508 U.S. at 228-29. Notably, the Supreme Court observed that if Congress had intended a narrow construction of the word "use" to mean "use as a weapon," it could have so indicated in the statute, but did not. Id. at 229. The Court declined to add such a requirement to the statute on its own. Id.

This Court finds this discussion relevant to and persuasive in the context of defendant's argument here. To invoke the life imprisonment enhancement under § 841(b)(1)(C), the statute requires "death or serious bodily injury [to have] result[ed] from the *use* of such substance" distributed in violation of § 841(a)(1). Nowhere does the statute require that the substance be used *as intended*, and the Court should decline to insert this restrictive meaning into the statute. See Smith, 508 U.S. at 229. Indeed, such a restrictive meaning would appear to run counter to Congress's intent underlying § 841(b)(1)(C) to severely punish the conduct of drug traffickers for their distribution of drugs, regardless of whether the consequences of this unlawful conduct are expected or unexpected. McIntosh, 236

F.3d at 972; Valencia-Gonzales, 172 F.3d at 346.

This caution against a narrow reading of § 841(b)(1)(C) finds support in the legislative history of the statute. Congress enacted the Controlled Substances Act, 21 U.S.C. §§ 801-950, as Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 wherein Congress included severe penalty provisions for the distribution of controlled substances, stating that "[t]he illegal traffic in drugs should be attacked with the full power of the federal government. The price for participation in this traffic should be prohibitive. It should be made too dangerous to be attractive." H.R. Rep. No. 91-1444 (1970). To support the imposition of severe penalties, Congress specifically noted that "some evidence indicates that the threat of long sentences may deter nonusing traffickers." Id. In 1986, Congress enacted the Narcotics Penalties and Enforcement Act as part of the Anti-Drug Abuse Act of 1986, which amended the Controlled Substances Act by, inter alia, including the penalty enhancement provision of § 841(b)(1)(C) at issue here. As articulated by Congress, the purpose of such amendment was to provide more effective criminal penalties, including a heightened penalty for a violation of the Controlled Substances Act which results in death. It was specifically noted that the amendment provided a "special term of imprisonment if death or serious bodily injury results from violating the manufacture or distribution offenses. The special term is a mandatory 20-year prison term, and up to life imprisonment." H.R. Rep. No. 99-845 (1986). As such, a

review of the legislative history underlying the initial enactment of the Controlled Substances Act, coupled with the history underlying the 1986 amendments to include the "death results" provision, shows Congress to have intended to penalize drug traffickers for their conduct in *distributing* the drug rather than for the victim's specific conduct in their use of the drug.

In this cause, on the facts assumed for purposes of this motion, defendant distributed crack cocaine to Jason Bolar, who then ingested the crack cocaine by swallowing it and died as a result of such ingestion. Whether the method of Bolar's ingestion of the crack cocaine was in a manner normally or generally used by crack users is irrelevant. See, e.g., Soler, 275 F.3d at 152 (death resulted from unintended use of heroin by snorting instead of injecting). Under the circumstances present here, it would be "sophistry" to say that Bolar's death did not result from the use of the crack cocaine distributed to him by the defendant. See Robinson, 167 F.3d at 831; see also Houston, 406 F.3d at 1124 n.5 ("Proof that the resulting death was actually caused by ingestion of the controlled substance knowingly distributed by the defendant is sufficient to increase the punishment for the unlawful distribution.").

As such, in the absence of Congress's clear statement otherwise, the Court should decline the defendant's invitation to narrowly define the term "use" in § 841(b)(1)(C) to mean only "use as intended."

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that defendant Ronald Baker's Motion to Include *Mens Rea* and Causation Requirements in 21 U.S.C. § 841(b)(1)(C) and to Define the Term "Use" in that Statute or, Alternatively, to Declare 21 U.S.C. § 841(b)(1)(C) Unconstitutional as Applied in His Case (Docket No. 35) be denied.

The parties are advised that any written objections to this Report and Recommendation shall be filed not later than **November 6, 2006.** Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

_____
UNITED STATES MAGISTRATE JUDGE

Dated this  *25th*  day of October, 2006.